David Sanford, D.C. Bar No. 457933*
Stefanie Roemer, D.C. Bar No. 464450*
**Sanford, Wittels & Heisler, LLP**
1666 Connecticut Avenue, N.W.
Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7780
Facsimile:  (202) 742-7776
*Admitted Pro Hac Vice*

Grant Morris, D.C. Bar No. 926253*
**Law Offices of Grant E. Morris**
1666 Connecticut Avenue, N.W.
Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7783
Facsimile:  (202) 742-7776
*Admitted Pro Hac Vice*

Thomas Marc Litton, California Bar No. 119985
**Litton & Geonetta, LLP**
120 Montgomery Street
Suite 1600
San Francisco, CA  94104
Telephone: (415) 421-4770
Facsimile:  (415) 421-4784

*Class Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| **SAFRONIA DODD-OWENS, et al.,** ) <br><br> **Individually and on Behalf of All Others Similarly Situated,** ) <br><br> **PLAINTIFFS,** ) <br><br> **v.** ) <br><br> **KYPHON INC.,** ) <br><br> **DEFENDANT.** ) | **Case No. CV 06 03988 - JF** <br><br> **THIRD AMENDED CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** <br><br> **Judge Jeremy Fogel** |

1.     Plaintiffs Safronia Dodd-Owens, Natalie Amaya, Tera Byrer, Tiffany Socha, Teri Carr, Elizabeth "Lisa" Glus and Christy Wronikowski (hereafter "Class Representatives" or "Plaintiffs") bring this action to redress the gender discrimination they have experienced as current and former employees of Defendant Kyphon Inc. ("Kyphon" or "Defendant").  Class Representatives, individually and on behalf of all other similarly situated female employees of Kyphon, complain by their attorneys, Sanford, Wittels & Heisler, LLP and attorney Grant E. Morris (collectively, "Class Counsel"), as follows:

## I.     NATURE OF THIS ACTION

2.     Seven (7) women who work or have worked for Kyphon in California and six (6) other states ("Class Representatives") bring this action against Defendant Kyphon to redress gender discrimination in employment against them and all other female employees of Kyphon who are similarly situated, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-5(f), *et seq*., as amended ("Title VII").

3.     The Class Representatives seek to represent female sales force employees of Kyphon who work or have worked at Kyphon during the liability period.

4.     The systemic gender discrimination described in this Complaint has been, and is, continuing in nature.

5.      The Class Representatives are seeking, on behalf of themselves and the class they seek to represent, declaratory and injunctive relief; back pay; front pay; compensatory, nominal and punitive damages; and attorneys' fees, costs and expenses to redress Kyphon's pervasive and discriminatory employment policies, practices and/or procedures.

## II.     JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to Title VII to redress and

1

enjoin employment practices of Kyphon in violation of this statute.

7.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c), because Defendant is subject to personal jurisdiction and resides in California, and because one of the named plaintiffs resides and works in California.

8.    The Northern District of California is the most logical forum in which to litigate the claims of the Class Representatives and the proposed class in the case.  Defendant Kyphon is headquartered in Sunnyvale, California with registered agents in California.  In addition, Class Representative Christy Wronikowski resides and works in California.

## III.    PROCEDURAL HISTORY

9.    Class Representative Safronia Dodd-Owens ("Ms. Dodd-Owens") timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on approximately March 21, 2005.  Ms. Dodd-Owens received a "with cause" determination from the EEOC on approximately January 26, 2006. In particular, the EEOC found that "there is reasonable cause to believe that there is a violation of Title VII of the Civil Rights Act of 1964, as amended, in that the Respondent failed to promote the Charging Party and other potential similarly situated female employees based on their sex (female) and sex (female-pregnancy)."

10.    On May 10, 2006, Ms. Dodd-Owens's attorneys received a "Notice of Right to Sue" from the EEOC, stating that "The EEOC found reasonable cause to believe that violations of the statue(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for [Ms. Dodd-Owens]."  Ms. Dodd-Owens timely filed this suit within ninety (90) days of receipt of that Notice. Additionally, Ms. Dodd-Owens timely filed a Charge of Retaliation with the EEOC on May 17, 2006 and has received a Notice of Right to Sue for that Charge.

11.    All other Class Representatives have also filed charges of gender discrimination

2

with the EEOC and received Notices of Right to Sue.  In addition, Class Representatives Teri Carr and Christy Wronikowski have filed EEOC retaliation charges and have received Notices of Right to Sue for those charges as well.

### IV.    PARTIES

#### A.    Class Representatives

12.    **Class Representative Safronia Dodd-Owens** is a female citizen of the United States and a resident of Milwaukee in the State of Wisconsin.  Ms. Dodd-Owens began her employment at Kyphon in August 2003 as a Spine Education Specialist ("SES") in the Milwaukee, Wisconsin territory.  In October 2005, after the Company announced that it would eliminate all SES positions, Ms. Dodd-Owens became a Spine Consultant and she currently holds that position.

13.    **Class Representative Natalie Amaya** ("Ms. Amaya") is a female citizen of the United States and a resident of Lake Mary in the State of Florida.  Ms. Amaya joined Kyphon in December 2003 as a Spine Education Specialist in the Central Florida territory.  She worked in that position until she resigned in January 2006.

14.    **Class Representative Tera Byrer** ("Ms. Byrer") is a female citizen of the United States and a resident of Naples in the State of Florida.  Ms. Byrer began her employment with Kyphon in September 2003 as a Spine Education Specialist in the Naples-Ft. Myers territory.  From October 2005 until she resigned in February 2006, Ms. Byrer worked as a SES in the Sarasota, Ft. Myers and Naples territories.

15.    **Class Representative Tiffany Socha** ("Ms. Socha") is a female citizen of the United States and a resident of Carlstadt in the State of New Jersey.  Ms. Socha was employed by Kyphon as a SES in the New Jersey territory from October 2003 until she resigned in October 2006.

3

16.    **Class Representative Teri Carr** ("Ms. Carr") is a female citizen of the United States and a resident of Golden in the State of Colorado.  Ms. Carr began her employment at Kyphon in April 2004 as a SES in Denver, Colorado. Ms. Carr became a Spine Associate in Denver, Colorado in approximately October 2005, after Kyphon announced that it would eliminate all SES positions.  In July 2006, after the initial Complaint in this case was filed, Ms. Carr became a Spine Consultant.   Ms. Carr remained a Spine Consultant until she was wrongfully terminated on March 5, 2007.

17.    **Class Representative Elizabeth "Lisa" Glus** ("Ms. Glus") is a female citizen of the United States and a resident of Harrisburg in the State of Pennsylvania.  Ms. Glus began her employment with Kyphon in approximately May 2002 as a Spine Associate in the Central Pennsylvania territory.  In approximately March 2004, Ms. Glus became a SES in the Northern Pennsylvania territory.  She remained in that position until September 2005, when she became a Spine Consultant in the same territory.  Ms. Glus resigned in September 2005.

18.    **Class Representative Christy Wronikowski** ("Ms. Wronikowski") is a female citizen of the United States and a resident of San Francisco in the State of California.  Ms. Wronikowski began her employment with Kyphon in approximately August 2006 as a Spine Associate in an Eastern Tennessee territory.  In approximately January 2007, Ms. Wronikowski became a Spine Consultant in a Northern California territory.  She remained in that position until she resigned in September 2007.

**B.    Defendant**

19.    Kyphon Inc. is a U.S.-based company founded in 1994, specializing in the development and marketing of balloon technology for spinal surgical applications.  Kyphon operates in approximately 310 sales territories in the United States and employs over 1,250 people nationwide.  Kyphon is incorporated in the State of Delaware and holds a registered

4

office at 209 Orange Street, City of Wilmington, County of New Castle, Delaware 19801. Kyphon is headquartered in the State of California at 1221 Crossman Avenue, Sunnyvale, California 94089, where it conducts its primary manufacturing, warehousing, research, regulatory and administrative activities.   On November 2, 2007, Kyphon was acquired by Medtronic, Inc.

20.    Upon information and belief, Kyphon disseminates its policies and practices with regard to pay and promotion from the company's headquarters in Sunnyvale, California.

**V.    CLASS CLAIMS**

21.    The Class Representatives and the proposed class they seek to represent have been subjected to a systemic pattern and practice of gender discrimination involving a battery of practices which have also had an unlawful disparate impact on them and their employment opportunities.

22.    Kyphon in effect bars females from better and higher paying positions which have traditionally been held by male employees.  The systemic means of accomplishing such gender stratification include, but are not limited to, Kyphon's training, evaluation, promotion and assignment policies, practices and/or procedures.

23.    Kyphon's discriminatory pay and promotion policies, practices and/or procedures occur at all sales levels.

24.    Kyphon's pay and promotion policies, practices and/or procedures have had a disparate impact on the Class Representatives and the class members.  Such policies, practices and/or procedures are not valid, job-related, or justified by business necessity.  There are alternative objective and more valid procedures available to the Defendant that would have less of a disparate impact on females.  However, the Defendant has failed or refused to use such alternative procedures.

5

25.    For instance, Kyphon does not disseminate its promotional opportunities to all current employees.  Notices of job openings that are e-mailed to employees are limited to customer service and technical positions. Managerial job openings are not e-mailed to employees and are often filled by men before the vacancy becomes known, thus enabling the Company to keep its female employees from learning about available promotional opportunities and opportunities for increased compensation.

26.    Likewise, Kyphon delegates promotion and pay decisions to male managers who enjoy unbridled decision-making power.  These managers rely on highly subjective criteria with virtually no oversight and operate in a corporate atmosphere extremely hostile to women.  As a result, female sales employees are often dissuaded, discouraged or outright barred from applying for a promotion based on their managers' personal judgment.  In those instances where they are allowed to apply for positions, women are rejected in favor of their male counterparts.

27.    Kyphon does not provide employees with any formal performance evaluations. The lack of a formal and objective evaluation system for Kyphon sales employees allows male managers to exercise their own discretion in evaluating their sales team, allowing for subjective and inconsistent standards of review.

28.    Because of Kyphon's systemic pattern and practice of gender discrimination, the Class Representatives and class they seek to represent have been adversely affected and have experienced harm, including loss of compensation, wages, back pay, and employment benefits. This pattern and practice of gender discrimination includes: being denied promotions in favor of equally or less qualified male employees; being denied training opportunities provided to male employees; and being denied more favorable and more lucrative assignments..

29.    The Class Representatives and class members have no plain, adequate, or complete remedy at law to redress the rampant and pervasive wrongs alleged herein, and this suit

6

is their only means of securing adequate relief.  The Class Representatives and class members are now suffering irreparable injury from Kyphon's unlawful policies, practices and/or procedures as set forth herein, and will continue to suffer unless those policies, practices and/or procedures are enjoined by this Court.

### VI.    CLASS ACTION ALLEGATIONS PURSUANT TO RULE 23

### A.    Class Definition

30.    The Class Representatives seek to maintain claims on their own behalf and on behalf of a class of current and former Kyphon employees.  Each of the Class Representatives is a member of the class.

31.    The class includes, but is not necessarily limited to, all female citizens of the United States who are, or have been, employed by Kyphon in the United States as part of Kyphon's sales force.  Kyphon's sales force includes, but is not limited to, Spine Education Specialists, Spine Associates and/or Spine Consultants ("Consultants").    All of the Class Representatives are proposed representatives of the class.  Upon information and belief, there are approximately 150 members of the proposed class.

### B.    Efficiency of Class Prosecution of Common Claims

32.    Certification of a class of female employees similarly situated to the Class Representatives is the most efficient and economical means of resolving the questions of law and fact which are common to the claims of the Class Representatives and the proposed class.  The individual claims of the Class Representatives require resolution of the common question of whether Kyphon has engaged in a systemic pattern and/or practice of gender discrimination against female employees.  The Class Representatives seek remedies to eliminate the adverse effects of such discrimination in their own lives, careers and working conditions and in the lives, careers and working conditions of the proposed class members, and to prevent continued gender

7

discrimination in the future.  The Class Representatives have standing to seek such relief because of the adverse effect that such discrimination has had on them individually and on female employees generally.

33.    In order to gain such relief for themselves, as well as for the proposed class members, the Class Representatives will first establish the existence of systemic gender discrimination as the premise for the relief they seek.  Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

34.    The Class Representatives' individual and class claims are premised upon the traditional bifurcated method of proof and trial for disparate impact and systemic disparate treatment claims of the type at issue in this case.  Such a bifurcated method of proof and trial is the most efficient method of resolving such common issues.

**C.    Numerosity and Impracticability of Joinder**

35.    The class which the Class Representatives seek to represent is too numerous to make joinder practicable.  The proposed class consists of approximately 150 current, former and future female employees during the liability period.

**D.    Common Questions of Law and Fact**

36.    The prosecution of the claims of the Class Representatives will require the adjudication of numerous questions of law and fact common to both their individual claims and those of the proposed class they seek to represent.

37.    The common questions of law include, inter alia: (a) whether Kyphon has engaged in unlawful, systemic gender discrimination in its pay and promotion practices, policies and/or procedures; and (b) whether Kyphon is liable for a continuing systemic violation of Title VII.

8

38.    The common questions of fact would include, *inter alia*: whether, through its policies, practices and/or procedures Kyphon, (a) has promoted females less frequently than comparably situated male employees; (b) has precluded females from eligibility for equal pay and promotions by denying them training that male employees are afforded; (c) has policies, practices and/or procedures that have had a disparate impact on female employees; and (d) has engaged in a pattern and practice of failing to take prompt and effective action to remedy the gender discrimination in its workplace.

39.    Throughout the liability period, a disproportionately large percentage of the Spine Consultants, managers and supervisors at Kyphon have been male.    Even where female employees are promoted at Kyphon, they are often relegated to the less desirable, less profitable job assignments.

40.    The employment policies, practices and/or procedures to which the Class Representatives and the class members are subject are set at Kyphon's corporate level and apply universally to all class members throughout the country regardless of the territory, region, area or position in which they work.    For instance, all decisions regarding promotions must ultimately be approved by the Vice President of Sales, after the candidate receives the endorsement of both her manager and her area director.

41.    Discrimination in pay and promotion occurs as a pattern and practice throughout all of Kyphon's sales levels and all divisions.    Pay and promotion opportunities are driven by personal familiarity, subjective decision-making, pre-selection and interaction between male managers, supervisors, and subordinates rather than by merit or equality of opportunity.    As a result, male employees have advanced and continue to advance more favorable and more lucrative positions and assignments than female employees.

42.    Kyphon's promotional structure gives predominantly male managers the authority

9

to bar a sales employee from applying for a promotion based on their personal judgment. Managers do not follow a standard protocol for promotion, but rather base their decisions on highly subjective criteria. Kyphon's delegation of promotion and pay decisions to managers who enjoy unbridled decision-making power constitutes a policy or practice sufficient to satisfy the commonality requirement.

43. Kyphon's policies, practices and/or procedures have had an adverse impact on females seeking selection for, or advancement to, better and higher paying positions. Statistics provided by Kyphon demonstrate that, in general, the percentage of females holding the higher-paying Spine Consultant position is significantly lower than the percentage of women in the lower-paying Spine Education Specialist position.

**E.    Typicality of Claims and Relief Sought**

44. The claims of the Class Representatives are typical of the claims of the proposed class. The Class Representatives assert claims in each of the categories of claims they assert on behalf of the proposed class. The relief sought by the Class Representatives for gender discrimination complained of herein is also typical of the relief which is sought on behalf of the proposed class.

45. The Class Representatives are, like the members of the proposed class, all female employees who have worked for the Defendant during the liability period.

46. Discrimination in selection, promotion, advancement and training affects the compensation of the Class Representatives and all the class members in similar ways.

47. Kyphon has failed to respond to gender inequalities or complaints of discrimination and tolerates a system marked by gender bias, widespread managerial discretion, and a flawed complaint procedure.

48. Female sales employees at Kyphon have little or no recourse to voice complaints

10

about the inequalities they face.  There is no clear policy in place that directs employees to lodge complaints with Human Resources.  Rather, female sales employees must approach their managers, who are often responsible for perpetuating discrimination, in order to address their concerns.  This structure discourages female sales employees from expressing their concern about gender discrimination and allows managers to abuse their power without the intervention of a third party.  The Class Representatives and the class members have been affected in the same ways by Kyphon's failure to implement an adequate complaint mechanism to detect, monitor, and correct this pattern and practice of discrimination.

49.    Several of the Class Representatives have experienced retaliation from managers after complaining about gender discrimination, contacting Human Resources or filing EEOC Charges of Discrimination.

50.    Kyphon has failed to create adequate incentives for its managers to comply with equal employment opportunity laws regarding each of the employment policies, practices and/or procedures referenced in this Complaint and has failed to adequately discipline its managers and other employees when they violate anti-discrimination laws.  Company investigations into complaints have been inadequate and/or superficial.  The Class Representatives and the class members have been affected in the same ways by Kyphon's failure to implement adequate procedures to detect, monitor and correct this pattern and practice of discrimination.

51.    These failures have affected the Class Representatives and the class members in similar ways.

52.    The relief necessary to remedy the claims of the Class Representatives is exactly the same as that necessary to remedy the claims of the proposed class members in this case.  The Class Representatives seek the following relief for their individual claims and for those of the members of the proposed class: (a) a declaratory judgment that Kyphon has engaged in systemic

11

gender discrimination against female employees, by hindering their ability to be promoted to better and higher paying positions, limiting their employment opportunities to lower and less desirable classifications, limiting their training and transfer opportunities, exposing them to differential treatment and subjecting them to gender hostility at work; (b) a permanent injunction against such continuing discriminatory conduct; (c) injunctive relief which effects a restructuring of Kyphon's promotion, transfer, training, job assignments, compensation, and evaluation policies, practices and/or procedures so that in the future females will be able to compete fairly for promotions, transfers and assignments to better and higher paying classifications with terms and conditions of employment traditionally enjoyed by male employees; (d) equitable relief which effects a restructuring of the Kyphon workforce so that females are promoted into higher and better paying classifications that they would have held in the absence of Kyphon's past gender discrimination; (e) back pay, front pay and other equitable remedies necessary to make female employees whole from the Defendant's past discrimination; (f) compensatory damages; (g) punitive and nominal damages to prevent and deter Kyphon from engaging in similar discriminatory practices in the future; and (h) attorneys' fees, costs and expenses.

**F.    Adequacy of Representation**

53.    The Class Representatives interests are co-extensive with those of the members of the class that they seek to represent in this case.  The Class Representatives seek to remedy Kyphon's discriminatory employment policies, practices and/or procedures so that females will no longer be prevented from advancing into higher paying and more desirable positions and will not receive disparate pay and differential treatment.  The Class Representatives are willing and able to represent the proposed class fairly and vigorously as they pursue their similar individual claims in this action.  The Class Representatives have retained counsel who are qualified, experienced and able to conduct this litigation and to meet the time and fiscal demands required

to litigate an employment discrimination class action of this size and complexity. The combined interests, experience and resources of the Class Representatives and their counsel to litigate competently the individual and class claims at issue in this case clearly satisfy the adequacy of representation requirement of Fed.R.Civ.P. 23(a)(4).

### G.     Requirements of Rule 23(b)(2)

54.     Kyphon has acted on grounds generally applicable to the Class Representatives and the proposed class by adopting and following systemic policies, practices and/or procedures which are discriminatory on the basis of gender. Gender discrimination is Kyphon's standard operating procedure rather than a sporadic occurrence. Kyphon has refused to act on grounds generally applicable to the class by, *inter alia*, refusing to adopt and apply selection, pay and promotion, training, and evaluation policies, practices and/or procedures that would not have a disparate impact on, or otherwise systemically discriminate against, females. Kyphon's systemic discrimination and refusal to act on grounds that are not discriminatory have made appropriate the requested final injunctive and declaratory relief with respect to the class as a whole.

55.     Injunctive and declaratory relief are the predominant relief sought in this case because they are the culmination of the proof of Kyphon's individual and class-wide liability at the end of Stage I of a bifurcated trial and the essential predicate for the Class Representatives' and class members' entitlement to monetary and non-monetary remedies at Stage II of such trial. Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the existence of systemic gender discrimination against female employees at Kyphon. Declaratory and injunctive relief are the factual and legal predicates for the Class Representatives' and the class members' entitlement to monetary and non-monetary remedies for individual losses caused by and for exemplary purposes necessitated by such systemic discrimination.

13

**H.    Requirements of Rule 23(b)(3)**

56.    The common issues of fact and law affecting the claims of the Class Representatives and proposed class members, including, but not limited to, the common issues identified in paragraphs 36-43, predominate over any issues affecting only individual claims.

57.    A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class Representatives and members of the proposed class.

58.    The cost of proving Kyphon's pattern and practice of discrimination makes it impracticable for the Class Representatives and members of the proposed class to pursue their claims individually.

**VII.    ALLEGATIONS OF THE CLASS REPRESENTATIVES**

**A.    Safronia Dodd-Owens**

59.    Ms. Dodd-Owens' exceptional performance at Kyphon has won her the following awards: "Summit Club" in 2003 for selling $1.5 million worth of products; "President's Club" in 2004 for performing in the top ten percent (10%) of SES's in the country; and "Spine Education Specialist of the Quarter" in 2004 Quarter 4 for being the top-performing SES of the quarter in her territory.

60.    Ms. Dodd-Owens actively pursued a promotion from Spine Education Specialist to SES manager, but was denied advancement by Kyphon's predominantly male management.

61.    A SES Manager position would have provided Ms. Dodd-Owens with much more responsibility and compensation.

62.    In the fall of 2004, Ms. Dodd-Owens heard that Kyphon was promoting Spine Education Specialists to SES Managers.

63.    Ms. Dodd-Owens interviewed for the position of SES Manager in early December 2004. Despite her strong qualifications for the position, Ms. Dodd-Owens did not receive the

14

promotion.  Instead, Kyphon hired a male with no Kyphon experience for the position.

64.    Upon information and belief, Kyphon promoted about seven male SES's and only one female SES to SES Manager positions in January 2005.

65.    Ms. Dodd-Owens' managers told her that she was not promoted because upper-management was uncomfortable with promoting a woman who was nine months-pregnant to a SES Manager position.

66.    Kyphon gave Ms. Dodd-Owens less favorable territory assignments than her male counterparts, resulting in a smaller volume of sales and consequently less compensation.

67.    Ms. Dodd-Owens's SES position was eliminated in 2005 when Kyphon began dismantling the SES department, and she became a Spine Consultant in approximately October 2005.  While Ms. Dodd Owens' new position was considered higher in rank, this was so in title only.  Because she was assigned by her male supervisor to the smallest territory with the lowest volume of sales, Ms. Dodd-Owens was prevented from reaping the benefits of this so-called promotion from which her male counterparts were able to take advantage, including substantially increased compensation.

## B.    NATALIE AMAYA

68.    As a Kyphon SES, Ms. Amaya consistently ranked as one of the top performers in the company.  Among her awards are the "Spine Education Specialist Rookie of the Year" award in 2004, the "President's Club" award in 2004 for performing among the top ten percent (10%) of Spine Education Specialists in the country, the "Performance Club" award in 2005 for exceeding her sales quota for each quarter of the year, and the "Spine Education Specialist of the Quarter" award for being the top SES for 2005 Quarter 1.

69.    Kyphon gave Ms. Amaya less favorable territory assignments than her male counterparts, resulting in a smaller volume of sales and consequently less compensation.  In

15

March 2004, Kyphon hired a male with no medical device experience to would work in the company's new Ocala-Gainesville territory as a SES. When Ms. Amaya had previously requested to work in this new territory, she was informed that she lived too far away from the territory. Yet, SES Collins lives further away from the Ocala-Gainesville territory than Ms. Amaya.

70.    Ms. Amaya actively pursued a promotion from Spine Education Specialist to Spine Consultant, but was denied advancement by Kyphon's predominantly male management.

71.    As a Spine Consultant, Ms. Amaya would have earned about two to three times her compensation as a SES and would have had substantially increased responsibilities.

72.    Despite the fact that she ranked higher in sales than each of the three men for each quarter of her employment at Kyphon, and despite the fact that she was advised by Manager Buck Dixon that she met all of the requirements for receiving a promotion, Ms. Amaya was nonetheless denied the Spine Consultant position.

73.    In addition, Kyphon denied Ms. Amaya the same career-advancing training that her male counterparts received. In her proactive efforts to earn a promotion to Spine Consultant, Ms. Amaya requested to attend Spine Consultant training. Manager Dixon declined Ms. Amaya's request on the ground that only Spine Consultants were permitted to attend training. However, upon information and belief, SES's often attend Consultant training before being promoted.

## C.    TERA BYRER

74.    Ms. Byrer met or exceeded every annual sales quota that she was given at Kyphon. Together with the Spine Consultant on her team, she won the "Top Revenue Award" for 2004 Quarter 1 for generating the highest sales in the region.

75.    Ms. Byrer actively pursued a promotion from Spine Education Specialist to Spine

16

Consultant, but was denied advancement by Kyphon's predominantly male management.

76.     A Spine Consultant position would have provided Ms. Byrer with much more responsibility and compensation.

77.     During Ms. Byrer's hiring interview in 2003, she was told that she would be promoted to the position of Spine Consultant within two years.

78.     During 2004 and 2005, Ms. Byrer repeatedly expressed to her managers her interest in becoming a Spine Consultant.

79.     In 2004, Consultant positions opened up in the Naples, Florida division.  Ms. Byrer asked Manager Jim Lawless to consider her for one of the Consultant positions.  Ms. Byrer was denied a Consultant position.  The Consultant positions were given to two males from outside the Company.

80.     In August 2005, Ms. Byrer contacted Manager Lawless to inquire about a Consultant position that became vacant after a male Consultant was selected for a management training program.  Manager Lawless never responded to her inquiries.  Later, when Ms. Byrer asked Manager Lawless to explain her areas of weakness, Manager Lawless responded that, while he was impressed with her work and while there was nothing she needed to improve, he did not see her as a Spine Consultant.  Manager Lawless refused to give Ms. Byrer specific reasons for his assessment.  The open position went to a male candidate.

81.     In addition, in February 2006, Manager Lawless asked Ms. Byrer if she was still interested in a traveling Sales Consultant position.  When Ms. Byrer confirmed that she was interested in the position, Manager Lawless told her that he did not agree with her decision to pursue the position.  Specifically, Manager Lawless referred to Ms. Byrer's upcoming marriage and told her that it is difficult to have children and travel.

82.     Because her male managers repeatedly blocked her career advancement at

17

Kyphon, Ms. Byrer resigned from Kyphon in February 2006.

### D.    TIFFANY SOCHA

83.    Throughout her career at Kyphon, Ms. Socha always ranked in the top five percent (5%) in the nation in sales performance.  For several quarters, she ranked second in sales in the country.

84.    Kyphon denied Ms. Socha the same career-advancing training that her male counterparts received.

85.    Ms. Socha actively pursued a promotion from Spine Education Specialist to Spine Consultant, but was denied advancement by Kyphon's predominantly male management.

86.    A Spine Consultant position would have provided Ms. Socha with much more responsibility and compensation.

87.    In November 2004, Ms. Socha advised Manager O'Dea of her strong interest in a SES specialty oncology position in the New Jersey/New York area.  Manager O'Dea tried to avoid the conversation and only told Ms. Socha that she needed to perform well in upcoming quarters.  Shortly thereafter, a male SES with whom Manager O'Dea was friendly was promoted to SES Manager.

88.    In April 2005, Ms. Socha informed Manager Tush of her desire to be promoted to Spine Consultant.  Manager Tush responded that he was confident in Ms. Socha's abilities and that she would be promoted to this position in three to six months.

89.    Kyphon's male managers discouraged or refused to acknowledge Ms. Socha's repeated expressions of interest in a promotion.  Over the next few months, Manager Tush repeatedly pushed back the estimated time of Ms. Socha's promotion to Spine Consultant.  Then, in July 2005, Manager Tush told Ms. Socha that he could not promote her because she was pregnant and the Spine Consultant job was not for someone with children.  When Ms. Socha

asked Manager Tush to postpone the promotion until after she returned from maternity leave, he refused.

90.    In September 2005, Manager Tush asked Ms. Socha to fill in for a Spine Consultant position that had just opened up when a male Consultant left the company.  Although Ms. Socha effectively completed all of her Spine Consultant duties, Manager Tush refused to subsequently promote her to Spine Consultant.  By contrast, before Ms. Socha went on maternity leave in September 2005, Manager Tush hired Jose Romano as a Spine Consultant, and Mr. Romano has since been promoted to Spine Consultant Manager.

91.    In addition, Kyphon denied Ms. Socha equal pay for the same work performed by her male counterparts.  Despite Manager Tush's assurance that he would attempt to secure her a $9,000 bonus for the extra work she did as Consultant, Ms. Socha never received any extra pay.  By contrast, the male Consultant who had left the position vacant continued to receive his salary for approximately three weeks after he left the company.

**E.    TERI CARR**

92.    Ms. Carr won the President's Club award for performing among the top ten percent (10%) of all SES's in the country in 2005.

93.    Ms. Carr actively pursued a promotion from Spine Education Specialist to Spine Consultant, but was repeatedly denied advancement by Kyphon's predominantly male management.

94.    A Spine Consultant position would have provided Ms. Carr with much more responsibility and compensation.

95.    Kyphon's male managers discouraged or refused to acknowledge Ms. Carr's repeated expressions of interest in a promotion.  In approximately September 2005, Ms. Carr advised Manager Martin that she was very interested in an available Spine Consultant position in

19

a Colorado territory.

96.    In October 2005, Manager Martin hired a young male for the Colorado Springs Consultant position.

97.    Ms. Carr and Manager Martin then discussed an open Consultant position in the Denver West territory.  The night before her scheduled interview, Manager Martin told Ms. Carr that he and Area Director Anderson believed that she would be better suited for a Spine Associate position.

98.    Ms. Carr was subsequently rejected from the Denver West consultant position without explanation.  Instead, she was made a Spine Associate, with compensation equal to that which she earned as a SES and substantially less than what she would have earned as a Spine Consultant.

99.    The Denver West Consultant position was given to a young male.  It had also been offered to another male with less experience than Ms. Carr.

100.    In November 2005, after being passed up for two Consultant positions, Ms. Carr was asked to help prepare two male Consultants for Spine Consultant training.

101.    When Ms. Carr requested permission to fill in for the Consultants who were away on training, her request was denied without explanation.

102.    Kyphon failed to inform Ms. Carr of possible promotional opportunities. For instance, in late November of 2005, Kyphon opened another Consultant position in Colorado. Ms. Carr's managers did not alert her to this open position.

103.    Kyphon hired a young male with no prior experience in the Operating Room (which is one of the primary venues in which Spine Consultants and Spine Associates conduct their business) to fill the new Consultant position.

104.    Ms. Carr was later asked to help prepare the new male Consultant for Spine

20

Consultant training.

105.    In early 2006, Manager Martin informed Ms. Carr that some Spine Associates would be promoted to Spine Consultants in April 2006, but that she was not one of them.

106.    In late March or early April 2006, a male who had formerly worked with Ms. Carr as a Spine Consultant was promoted to Regional Sales Manager.  Because her managers did not advise her about the newly open Spine Consultant position in advance, Ms. Carr did not learn about its availability until after a male Consultant was selected.

107.    In addition, Kyphon denied Ms. Carr equal pay for performing the same work as her male counterparts.  At the end of 2005, Ms. Carr was asked to assume the sales responsibilities of a male Spine Consultant.  According to Manager Martin, this would help Ms. Carr prove that she could be a successful Spine Consultant.

108.    Although she was required to do the work of this other male Consultant, Ms. Carr received no additional compensation.

109.    Moreover, Kyphon's male managers outright barred Ms. Carr from applying for a promotion.  In April 2006, Regional Sales Manager Smith told Ms. Carr that a Spine Consultant position would be opening in Central Denver in mid-2006.

110.    However, in late April 2006, Regional Sales Manager Smith would not allow Ms. Carr to interview along with other males for this position.

F.    ELIZABETH "LISA" GLUS

111.    Ms. Glus met or exceeded the sales quotas given to her by Kyphon for each quarter and in each position she held.  In 2003, she, along with the Spine Consultant with whom she was partnered, won the "Summit Club" award for generating more than $1 million in revenue.

112.    Ms. Glus actively pursued a promotion from Spine Education Specialist to SES

21

Manager but was repeatedly denied advancement by Kyphon's predominantly male management.

113.     In approximately June 2004, Ms. Glus applied to be SES Manager.  As a SES Manager, she would make about twice her compensation as a Spine Associate and would assume a significant increase in job responsibilities.

114.     During Ms. Glus' interview for the SES Manager position, her male interviewer asked her why she would even think about this position when she had kids.

115.     Despite the fact that Ms. Glus had been a successful manager at another company before joining Kyphon, she was rejected from the SES Manager position.  The position went to a young male who Ms. Glus had mentored at another company, who had substantially less pharmaceutical experience than Ms. Glus had, and who had been with Kyphon for one-quarter of the amount of time as Ms. Glus.

116.     In September 2005, when Kyphon was eliminating the SES department, Ms. Glus was given a Spine Consultant position with Kyphon.  This position had less compensation and significantly less responsibilities than those of a SES Manager.  Moreover, Ms. Glus was given a territory with only three hospitals and a correspondingly low revenue potential, in contrast with her male counterparts.  As a result, Ms. Glus' earnings as a Spine Consultant, which are supposed to be primarily commissions-based, would have been less than what she earned as a SES.

117.     Because she had no promotional opportunities at Kyphon with regard to increasing her earnings, Ms. Glus resigned from Kyphon in September 2005.

### G.     CHRISTY WRONIKOWSKI

118.     Kyphon denied Ms. Wronikowski equal pay for performing the same work as her male counterparts.  Before relocating from Tennessee to California to work at Kyphon, Ms.

22

Wronikowski was assured that, if she were to take the job, she would receive a guarantee of $5,000 per month for her first two months. Kyphon customarily offers new Consultants guarantees for their first few months in the field to enable them to adjust to their new positions and build sales relationships in the territory.

119.    Not only did Ms. Wronikowski not receive her guarantee for January until mid-February, but was also told that this would be her only guarantee payment.

120.    By contrast, at least two other male Spine Consultants who were placed in more lucrative sales territories than Ms. Wronikowski received guarantees for two months and six months, respectively.

121.    Moreover, Ms. Wronikowski never received the relocation bonus that she was promised in her offer letter. Other male Spine Consultants received relocation bonuses from Kyphon.

122.    In addition, Kyphon gave Ms. Wronikowski less favorable territory assignments than her male counterparts, resulting in a smaller volume of sales and consequently less compensation.

123.    Despite the fact that Ms. Wronikowski was given the smallest territory in terms of both volume and accounts, she was not permitted to share the revenue for "open" territories in which new Spine Consultants had not yet been hired. By contrast, her male counterparts with larger sales volumes were allowed to partake in such opportunities.

124.    When Ms. Wronikowski discussed these issues with Regional Manager Steve Carmody ("Manager Carmody"), he initially assured her that he would re-assign her a large hospital from one of the male Spine Consultants with the greatest sales volume in the territory. Yet, none of the males in her region were required to give up any of their territory, leaving them with a disproportionate amount of revenue relative to her and other female Spine Consultants.

23

125.    When, on several occasions, Ms. Wronikowski reminded Manager Carmody that the territory distribution in her region was disproportionate, he told her to stop complaining. Although he agreed that her territory was "saturated," Mr. Carmody told Ms. Wronikowski that he was not going to give her any of the other hospitals.  Rather he made it clear that he intended to hire a male Spine Consultant for the high-revenue producing hospitals in his region.   In response to Ms. Wronikowski's statement that this was not fair, Manager Carmody stated that as a woman, she was lucky to be a Spine Consultant at all.

126.    The more Ms. Wronikowski questioned Manager Carmody about the inequities of her territory, the more hostile Manager Carmody became.  He insisted on doing "ride alongs" while Ms. Wronikowski made sales calls.  He repeatedly called her about her schedule and her whereabouts, on one occasion advising her that he was taking notes on their conversation. Manager Carmody did not monitor his male Spine Consultants the same way.

127.    Moreover, Manager Carmody repeatedly asked Ms. Wronikowski inappropriate questions and made provocative sexual comments.  On several occasions, Manager Carmody called Ms. Wronikowski at night solely to make small talk.  He insisted that Ms. Wronikowski do "personal" favors for him, such as driving him an hour and a half out of her way to pick up his car and going to non-business related dinners with him.   Upon information and belief, Manager Carmody did not treat any other Spine Consultants this way.

128.    Manager Carmody told Ms. Wronikowski that women make better Spine Associates than Spine Consultants.

129.    Manager Carmody and other male managers and Spine Consultants often referred to Spine Associates, who assist the Spine Consultants,  as "CBs" ("case bitches")

130.    Manager Carmody often spoke negatively about former female Spine Consultants that worked in his region, saying that they "did not belong."  He once remarked that he was glad

24

he got away with firing one such woman when she was on medical leave.

## CLASS COUNTS

### COUNT I

### VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq.*

### GENDER DISCRIMINATION

131.    Class Representatives re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as though fully set forth herein.

132.    Kyphon has discriminated against the Class Representatives and all members of the proposed class by treating them differently from and less preferably than similarly situated male employees and by subjecting them to discriminatory denials of pay and promotion in violation of Title VII.

133.    Kyphon's conduct has been disparate, intentional, deliberate, willful and conducted in callous disregard of the rights of the Class Representatives and the members of the proposed class.

134.    Kyphon's policies, practices and/or procedures have produced a disparate impact against the Class Representatives and the class members with respect to the terms and conditions of employment.

135.    By reason of the continuous nature of Kyphon's discriminatory conduct, persistent throughout the employment of the Class Representatives and class members, the Class Representatives and class members are entitled to application of the continuing violation doctrine to all of the violations alleged herein.

136.    By reason of the discrimination suffered at Kyphon, the Class Representatives

25

and the members of the proposed class are entitled to all legal and equitable remedies available under Title VII.

## Individual Counts

## COUNT II

## VIOLATION OF TITLE VII, 42 U.S.C. § 2000E-3

## RETALIATION
**(On Behalf of Named Plaintiff Dodd-Owens)**

137.    Ms. Dodd-Owens re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as though fully set forth herein.

138.    Ms. Dodd-Owens timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on approximately March 21, 2005.

139.    Then, in the first quarter of 2006, Manager Gayton doubled Ms. Dodd-Owens' quota.  This was the highest increase in quota among all of her team members.  Realizing that this goal was unattainable in her assigned territory, Ms. Dodd-Owens requested a monthly guarantee to offset her lower salary as a Spine Consultant.  Manager Gayton refused and, as she expected, Ms. Dodd-Owens was unable to meet the unattainable quota set by her male manager.  As a result, several months passed before Ms. Dodd-Owens was able to earn enough in commissions to offset her reduced salary since becoming a Spine Consultant in October 2005.

140.    Kyphon follows an unwritten policy that Consultants may be terminated if they do not meet their sales quotas for two consecutive quarters.  By repeatedly increasing Ms. Dodd-Owens quota by a larger amount than her male counterparts, and by denying her a timely guarantee extension, Kyphon created conditions where her salary is significantly lower than that of her male counterparts.

141.    In late March 2006, Manager Gayton gave Ms. Dodd-Owens the highest quarterly

26

quota increase among her team members for the second time, even though Ms. Dodd-Owens' sales for the first quarter had not met his previous quota. Moreover, while Manager Gayton denied Ms. Dodd-Owens' request to seek assistance from the Spine Associate assigned to her region, he instructed the same Spine Associate to assist three male Spine Consultants in Ms. Dodd-Owens's region.

142.    Manager Gayton has scrutinized Ms. Dodd-Owens' sales performance well beyond that of her male counterparts. For example, in April 2006, Manager Gayton sent Ms. Dodd-Owens a "Performance & Review Follow-up," which none of her counterparts has ever received.

143.    Kyphon retaliated against Ms. Dodd-Owens because she complained about gender discrimination and pregnancy discrimination by subjecting her to adverse employment actions, including but not limited to, disparate terms and conditions of employment in violation of Title VII § 2000E-3.

144.    Kyphon's actions were intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of causing harm to Ms. Dodd-Owens.

145.    As a direct and proximate result of Kyphon's aforementioned conduct, Ms. Dodd-Owens was damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

146.    By reason of the retaliation suffered at Kyphon, Ms. Dodd-Owens is entitled to all legal and equitable remedies available under Title VII § 2000E-3.

27

## COUNT III

### VIOLATION OF TITLE VII, 42 U.S.C. § 2000E-3

### RETALIATION
### (On Behalf of Named Plaintiff Amaya)

147.    Ms. Amaya re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as though fully set forth herein.

148.    In approximately October 2005, Ms. Amaya had a field visit with Manager Dixon's supervisor, Regional Sales Manager Lisa Furnish ("Regional Sales Manager Furnish"). During this field visit, which was part of Ms. Amaya's formal interview for a Spine Consultant promotion, Ms. Amaya complained to Regional Sales Manager Furnish about the inappropriate questions regarding her personal life that Manager Dixon had asked her during her informal interview for the Spine Consultant promotion in September 2005.  Regional Sales Manager Furnish told Ms. Amaya that her complaint would be forwarded to Human Resources.

149.    Approximately one week after Ms. Amaya complained to Regional Sales Manager Furnish about Manager Dixon's inappropriate questions, Vice President of Human Resources Steve Hams ("Vice President Hams") called Ms. Amaya and told her that she misunderstood Manager Dixon's questions regarding her marriage and family plans.  Ms. Amaya tried to explain why Manager Dixon's questions were inappropriate and why they made her feel uncomfortable, but Vice President Hams did not listen to her.

150.    After Ms. Amaya spoke with Vice President Hams, she learned at the end of October 2005 that Greg Harmon ("Consultant Harmon"), a male former SES employee who had been ranked last place in the nation, was promoted to the Spine Consultant position for which she had previously interviewed.  Ms. Amaya did not understand how Consultant Harmon could have been more qualified than she was for a Spine Consultant promotion, especially since she

ranked first place in the nation among SES's. Like many female Kyphon employees, Ms. Amaya believed that her complaint to Human Resources ensured that she would never be promoted.

151.    In March 2004, Kyphon hired Brook Collins ("SES Collins"), a male with no medical device experience, who would work in the company's new Ocala-Gainesville territory as a SES. When Ms. Amaya had previously requested to work in this new territory, she was informed that she lived too far away from the territory. SES Collins lives further away from the Ocala-Gainesville territory than Ms. Amaya.

152.    Kyphon retaliated against Ms. Amaya because she complained about gender discrimination by subjecting her to adverse employment actions, including but not limited to, disparate terms and conditions of employment in violation of Title VII § 2000E-3.

153.    Kyphon's actions were intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of causing harm to Ms. Amaya.

154.    As a direct and proximate result of Kyphon's aforementioned conduct, Ms. Amaya was damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

155.    By reason of the retaliation suffered at Kyphon, Ms. Amaya is entitled to all legal and equitable remedies available under Title VII § 2000E-3.

### COUNT IV

### VIOLATION OF TITLE VII, 42 U.S.C. § 2000E-3

### RETALIATION
### (On Behalf of Named Plaintiff Glus)

156.    Ms. Glus re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as though fully set forth herein.

157.    In May 2003, Ms. Glus reported to Vice President of Human Resources Steve Hams ("Vice President Hams") that Manager Tush had made inappropriate comments that included pressuring her to go into the Operating Room despite her doctor's orders not to go in while she was pregnant.

158.    In June 2003, Vice President Hams told Ms. Glus that she and two male Spine Associates, Larry Nelson ("Consultant Nelson") and Brian Makovsky ("Consultant Makovsky"), would be promoted to Spine Consultants.  Vice President Hams told Ms. Glus that she was the most capable of the three being promoted to Spine Consultant.  Consultant Nelson and Consultant Makovsky began their new Spine Consultant positions immediately, but Ms. Glus was informed that she would have to wait until she returned from maternity leave in the spring of 2004 to start her new position.  Accordingly, from the announcement of her promotion until she left for maternity leave in November 2003, Ms. Glus remained a Spine Associate while her male colleagues reaped the monetary benefits of their promotions to Spine Consultant.

159.    Kyphon retaliated against Ms. Glus because she complained about gender discrimination and pregnancy discrimination by subjecting her to adverse employment actions, including but not limited to, disparate terms and conditions of employment in violation of Title VII § 2000E-3.

160.    Kyphon's actions were intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of causing harm to Ms. Glus.

161.    As a direct and proximate result of Kyphon's aforementioned conduct, Ms. Glus was damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

162.    By reason of the retaliation suffered at Kyphon, Ms. Glus is entitled to all legal and equitable remedies available under Title VII § 2000E-3.

30

## COUNT V

### VIOLATION OF TITLE VII, 42 U.S.C. § 2000E-3

### RETALIATION
### (On Behalf of Named Plaintiff Socha)

163.    Ms. Socha re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as though fully set forth herein.

164.    In September 2005, Ms. Socha complained to Vice President Hams that she was being denied a promotion because she was pregnant, and she expressed concern about her job security, especially with the dissolution of the SES program.  After speaking with Manager Bridenstein and Manager Tush, Vice President Hams contacted Ms. Socha the following day and told her that Manager Tush had reservations about her ability.  Vice President Hams then stated that Ms. Socha could change her mind about attending Spine Consultant training and its related health risks, implying that Ms. Socha's pregnancy was responsible for her not being promoted. Vice President Hams then told Ms. Socha that Kyphon was still trying to figure out how to deal with pregnant women at the company.

165.    Kyphon retaliated against Ms. Socha because she insisted upon a work environment free of gender discrimination and because she complained about gender discrimination by subjecting her to adverse employment actions, including but not limited to, disparate terms and conditions of employment in violation of Title VII  § 2000E-3.

166.    Kyphon's actions were intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of causing harm to Ms. Socha.

167.    As a direct and proximate result of Kyphon's aforementioned conduct, Ms. Socha was damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

31

168.    By reason of the retaliation suffered at Kyphon, Ms. Socha is entitled to all legal and equitable remedies available under Title VII § 2000E-3.

## COUNT VI

### VIOLATION OF TITLE VII, 42 U.S.C. § 2000E-3

### RETALIATION
### (On Behalf of Named Plaintiff Carr)

169.    Ms. Carr re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as though fully set forth herein.

170.    In June 2006, Ms. Carr filed a charge with the EEOC, along with a complaint in this case, alleging that Kyphon had discriminated against her on the basis of gender.

171.    In approximately July 2006, Ms. Carr was made a Spine Consultant and was assigned to a territory in Denver, Colorado.  Thereafter, Ms. Carr's supervisor, Regional Sales Manager Korby Smith, refused to give Ms. Carr sales credit and commissions payments for approximately $40,000 worth of Kyphon products that she had sold in her first two quarters as a Spine Consultant (Quarters 3 and 4).  Manager Korby's refusal to give Ms. Carr credit for her sales reduced her commissions rate, resulting in a substantial deficit in her commissions earnings.

172.    On March 5, 2007, Kyphon fired Ms. Carr, claiming that her termination was due in part to poor sales and in part to her judgment as sales employee being called into question.  Ms. Carr was not provided with any further details regarding the company's justification for terminating her.  Kyphon's assessment of Ms. Carr's sales performance was inaccurate due to her being denied credit for a substantial portion of her completed sales.

173.    A former male Spine Consultant in Ms. Carr's region did not meet his quota for several consecutive quarters and was not disciplined, let alone terminated.

32

174.    Kyphon retaliated against Ms. Carr because she complained about gender discrimination, insisted upon a work environment free of gender discrimination and because she complained about gender discrimination by subjecting her to adverse employment actions and by terminating her from her employment, in violation of Title VII § 2000E-3.

175.    Kyphon's actions were intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of causing harm to Ms. Carr.

176.    As a direct and proximate result of Kyphon's aforementioned conduct, Ms. Carr was damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

177.    By reason of the retaliation suffered at Kyphon, Ms. Carr is entitled to all legal and equitable remedies available under Title VII § 2000E-3.

<u>**COUNT VII**</u>

**VIOLATION OF TITLE VII, 42 U.S.C. § 2000E-3**

**RETALIATION**
**(On Behalf of Named Plaintiff Wronikowski)**

178.    Ms. Wronikowski re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as though fully set forth herein.

179.    In February 2007, Ms. Wronikowski complained to her supervisor, Manager Carmody, about the lack of sales opportunities in her assigned territory and Manager Carmody's unwillingness to give her more sales opportunities that were available.

180.    Since that time, Manager Carmody became increasingly aggressive towards and demanding of Ms. Wronikowski. He subjected her to scrutiny beyond that imposed upon other sales employees and became outwardly hostile and accusatory towards her. On more than one occasion, Manager Carmody asked Ms. Wronikowski to resign from the company.

33

181.    In March 2007, Ms. Wronikowski filed a charge with the EEOC, alleging that Kyphon has discriminated against her on the basis of gender.  The Charge included information about Manager Carmody's inappropriate behavior toward Ms. Wronikowski.    When Ms. Wronikowski's attorneys notified the EEOC about her allegations on March 7, 2007, they sent a courtesy copy of these communications to Kyphon's attorney on this same date.

182.    After Kyphon's attorneys were notified about Ms. Wronikowski's allegations and her EEOC charge, Vice President Hams and other managers repeatedly contacted Ms. Wronikowski about her EEOC charge.  During those conversations,    Ms. Wronikowski was repeatedly questioned about her performance as an employee and was advised, for the first time, that other Kyphon employees had complained about her demeanor.

183.    On March 9, 2007, Ms. Wronikowski was called to a meeting with Vice President Hams and Area Manager Lisa Furnish, ostensibly, to discuss her allegations about Manager Carmody.    Despite the fact that Ms. Wronikowski advised Vice President Hams and Area Manager Furnish that this meeting conflicted with a scheduled appointment she had with a client, they insisted that she attend the meeting and kept her there for approximately one hour. Ms. Wronikowski's client was upset that she was unable to attend the scheduled appointment. Area Manager Furnish spent the majority of the meeting advising Ms. Wronikowski of her alleged performance problems.

184.    On March 22, 2007, Ms. Wronikowski was called to another meeting to discuss her EEOC charge.    During this meeting, which lasted over five hours, Human Resources Generalist Liz Doty interrogated Ms. Wronikowski and attempted to persuade Ms. Wronikowski that her allegations were a mere misunderstanding.  Ms. Wronikowski was only offered water once during the entire five-hour interrogation period; she was never offered a bathroom break.

185.    The meeting on March 22, 2007 occurred at the end of the sales quarter - a time

34

that is critical to sales employees who are trying to meet their quarterly quota. Despite the fact that she lost nearly a day's work as a result of the duration of this meeting, Ms. Wronikowski was still able to exceed her quarterly sales quotas.

186.    Ms. Wronikowski's attorneys have filed an EEOC charge of retaliation against Kyphon.

187.    Kyphon retaliated against Ms. Wronikowski because she insisted upon a work environment free of gender discrimination and because she complained about gender discrimination by subjecting her to adverse employment actions, including but not limited to, disparate terms and conditions of employment in violation of Title VII § 2000E-3.

188.    Kyphon's actions were intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of causing harm to Ms. Wronikowski.

189.    As a direct and proximate result of Kyphon's aforementioned conduct, Ms. Wronikowski was damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

190.    By reason of the retaliation suffered at Kyphon, Ms. Wronikowski is entitled to all legal and equitable remedies available under Title VII § 2000E-3.

## PRAYER FOR RELIEF

WHEREFORE, the Class Representatives, on behalf of themselves and the members of the class whom they seek to represent, request the following relief:

A.    Certification of the case as a class action maintainable under Fed.R.Civ.P. 23 (a), (b)(2) and/or (b)(3), on behalf of the proposed Class, and designation of the proposed Class Representatives as representatives of this class and their counsel of record as class counsel;

B.    Declaratory judgment that Kyphon's employment policies, practices and/or

35

procedures challenged herein are illegal and in violation of Title VII;

C. A permanent injunction against Kyphon and their partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with them, from engaging in any further unlawful practices, policies, customs, usages, and gender discrimination by the Defendant as set forth herein;

D. An Order requiring Kyphon to initiate and implement programs that (i) will provide equal employment opportunities for female employees; (ii) will remedy the effects of the Defendant's past and present unlawful employment policies, practices and/or procedures; and (iii) will eliminate the continuing effects of the discriminatory and retaliatory practices described above;

E. An Order requiring Kyphon to initiate and implement systems of assigning, training, transferring, compensating and promoting female employees in a non-discriminatory manner;

F. An Order establishing a task force on equality and fairness to determine the effectiveness of the programs described in (D) through (E) above, which would provide for (i) monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity; (ii) the assurance that injunctive relief is properly implemented; and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described in (D) through (E) above;

G. An Order placing or restoring the Class Representatives and the class members into those jobs and/or assignments they would now be occupying but for Kyphon's discriminatory policies, practices and/or procedures;

H. An Order directing Kyphon to adjust the wage rates and benefits for the Class Representatives and the class members to the level that they would be enjoying but for the

36

Defendant's discriminatory policies, practices and/or procedures;

I.      An award of back pay, front pay, lost benefits, preferential rights to jobs and other damages for lost compensation and job benefits suffered by the Class Representatives and the class members to be determined at trial;

J.      An award of compensatory, nominal and punitive damages to Class Representatives and the class in an amount to be determined at trial;

K.      An award of litigation costs and expenses, including reasonable attorneys' fees, to the Class Representatives and class members;

L.      Pre-judgment interest;

M.      Such other and further relief as the Court may deem just and proper; and

N.      Retention of jurisdiction by the Court until such time as the Court is satisfied that the Defendant has remedied the practices, policies and/or procedures complained of herein and are determined to be in full compliance with the law.

Plaintiffs Dodd-Owens, Amaya, Socha, Glus, Carr and Wronikowski seek, in addition to the above, an award of compensatory, nominal and punitive damages associated with their individual counts in an amount to be determined at trial, in addition to an award of litigation fees and expenses, including reasonable attorneys' fees, costs and disbursements.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of all issues triable of right to a jury.

                                   Respectfully submitted this 13th day of November, 2007.


          /s/ David Sanford _____

David Sanford, D.C. Bar No. 457933*
Stefanie Roemer, D.C. Bar No. 464450*
**Sanford, Wittels & Heisler, LLP**
1666 Connecticut Avenue, N.W.
Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7780
Facsimile:  (202) 742-7776
* Admitted *pro hac vice*

Grant Morris, D.C. Bar No. 926253*
**Law Offices of Grant E. Morris**
1666 Connecticut Avenue, N.W.
Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7783
Facsimile:  (202) 742-7776
* Admitted *pro hac vice*

Thomas Marc Litton, California Bar No. 119985
**Litton & Geonetta, LLP**
120 Montgomery Street
Suite 1600
San Francisco, CA  94104
Telephone: (415) 421-4774
Facsimile:  (415) 421-4784

*Class Counsel for Plaintiffs*

38

1

2

**CERTIFICATE OF SERVICE**

3        I, the undersigned, declare as follows: I am employed at the Law Firm of Sanford,

4   Wittels & Heisler, District of Columbia;  I am over the age of eighteen years and not a party to
the within entitled action; my business address is 1666 Connecticut Avenue, N.W., Suite 310.

5        I hereby certify that on November 13, 2007, the foregoing PLAINTIFFS' THIRD

6   AMENDED CLASS ACTION COMPLAINT was filed electronically.  Notice of filing will be
sent to the following party by operation of the Court's electronic filing system.  The parties may

7   access this filing through the Court's system.

8   RHONDA L. NELSON (CA State Bar No. 116043)
HAROLD R. JONES

9   SEVERSON & WERSON
A Professional Corporation

10  One Embarcadero Center, Suite 2600
San Francisco, CA 94111

11  Telephone:  (415) 398-3344
Facsimile:  (415) 956-0439

12  rln@severson.com

13  hrj@severson.com

14  LUANNE R. SACKS (State Bar No. 120811)
CARTER WINFORD OTT

15  DLA PIPER US LLP

16  153 Townsend Street, Suite 800
San Francisco, California 94107

17  Telephone: (415) 836-2500
Facsimile: (415) 836-2501

18  luanne.sacks@dlapiper.com
carter.ott@dlapiper.com

19

20

21   (X)  BY ELECTRONIC MAIL: I caused said document(s) to be delivered to the electronic
addresses identified above.

22

23        I declare under penalty of perjury under the laws of the United States that the foregoing is
true and correct.

24  Executed on November 13, 2007.

25                                                                            __/s/ Claudia Setubal_____

26                                                                                      Claudia Setubal

27

28